Díaz, Demandante y Apelante, *v.* Plazuela Sugar Company, Demandada y Apelada.

Apelación procedente de la Corte de Distrito de San Juan, Sección Primera, en pleito sobre retracto.

No. 2279.—Resuelto en abril 12, 1921.

Retracto de Herederos—Prueba de que el Heredero Conocía la Venta.—Si bien de acuerdo con el artículo 1034 del Código Civil el comprador está en la obligación de probar que el heredero que trata de redimir la propiedad tenía conocimiento de la venta desde un mes antes de la fecha de la demanda de retracto, examinados los hechos aparece de los mismos que la prueba directa y circunstancial hicieron cambiar el peso de la prueba.

Id.—Evidencia—Credibilidad del Testigo—Discreción Judicial.—Aunque un testigo no haya sido rotunda o directamente contradicho la corte sentenciadora tiene el derecho de no darle crédito.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. L. Llorens Torres.*

Abogado de la apelada: *Sr. J. Martínez Dávila.*

El Juez Asociado Sr. Wolf, emitió la opinión del tribunal. El artículo 1034 del Código Civil prescribe lo siguiente:

"Si alguno de los herederos vendiere a un extraño su derecho hereditario antes de la partición, podrán todos o cualquiera de los coherederos subrogarse en el lugar del comprador, reembolsándole el precio de la compra, con tal que lo verifiquen en término de un mes a contar desde que esto se les haga saber."

Luis F. Díaz Llenza presentó una demanda contra Plazuela Sugar Company, tratando de aprovecharse del privilegio de dicho artículo en vista de que un hermano del apelante llamado Bonocio había vendido a dicha corporación su derecho hereditario en los bienes de su padre. Las partes convienen en que esta apelación envuelve principalmente una sola cuestión, o sea, si el apelante tuvo conocimiento de la referida venta más de un mes antes de la radicación de la demanda.

Esta venta, si bien se hizo en junio 5, 1915, no fué inscrita hasta mucho tiempo después, esto es, en noviembre 5, 1918. La demanda original lleva fecha diciembre 4, 1918 y juntamente, como en ella se indica, fué hecha la debida consignación del dinero para recobrar el alegado derecho hereditario del hermano del apelante, suponiendo que tal privilegio podía en realidad servir al apelante.

La cuestión es algo intrincada toda vez que Bonocio así como sus hermanos recientemente habían heredado tanto de su madre como de su padre y también porque en alguna de la correspondencia del caso es la corporación Balseiro & Giorgetti la que aparece actuando y no la Plazuela Sugar Company.

El demandante y apelante declaró que el primer conocimiento que tuvo de la venta fué al visitar el Registro de la Propiedad de Arecibo en noviembre 5, 1918, que fué precisamente el día en que se inscribió la venta. El recibió una carta en donde le decían que Bonocio había vendido sus participaciones y fué con su abogado al registro para cerciorarse

de la verdad de la información. Alega él que el peso de la prueba recaía sobre el apelado para probar que el apelante tuvo conocimiento de la venta con fecha anterior a dicho día 5 de noviembre, 1918. La apelada aceptó el peso de la prueba y obtuvo sentencia a su favor.

Una escritura de fecha julio 1, 1915, fué presentada como prueba en la cual ocho hermanos de Bonocio conferían poder a otro hermano Rafael, para cobrar de Balseiro & Giorgetti los arrendamientos de la finca "Higüerito," la cual, como expresa la escritura, poseían en común *proindiviso* dichos hermanos por herencia en distintas fechas, de su madre y de su padre, habiendo pertenecido la finca a los bienes gananciales. Bonocio no compareció en la escritura. Muestra la demanda que hay precisamente diez hermanos, los ocho que confieren el poder, el apoderado Rafael y asimismo Bonocio. La ausencia de Bonocio en la escritura fué una circunstancia que tendía a mostrar que sus hermanos sabían que él había vendido toda su participación en "Higüerito."

Fué llamado como testigo el notario que hizo la escritura. Este declaró que en el momento de su otorgamiento informó a todas las partes que Bonocio había hecho cesión de sus derechos en la finca "Higüerito" a Balseiro & Giorgetti (*sic*); que Bonocio otorgó la escritura a Plazuela Sugar Company actuando el testigo como notario y en esa escritura compareció Epifanio Fernández en representación de Balseiro & Giorgetti (*sic*). La escritura a Plazuela Sugar Company muestra que Vanga compareció a nombre de esa compañía. Repreguntado el testigo dijo que no estaba absolutamente seguro de que el apelante estuviera presente cuando hizo la manifestación a los herederos pero creía que todos estaban allí. No recordaba que el apelante saliera de la oficina para buscar los testigos. Sin embargo, al ser llamado el apelante como testigo manifestó que no se hizo tal manifestación en su presencia y que salió a buscar los testigos.

La parte principal de la prueba en el caso es una carta

escrita por el apelante a Balseiro & Giorgetti, carta que los autos tienden a mostrar que fué escrita en 13 de mayo de 1918.  La fecha precisa es inmaterial puesto que toda la prueba tiende de modo concluyente a establecer que fué escrita hacia esa fecha.  El apelante en varias ocasiones había representado a sus hermanos en sus negociaciones respecto a la finca "Higüerito."  Admitió al declarar como testigo que también en ocasiones, si no generalmente, había representado a Bonocio.  Balseiro & Giorgetti arrendatarios de "Higüerito" concertaban con el apelante acerca del arrendamiento que había de pagarse por dicha propiedad.  En la carta que escribió el apelante, dijo entre otras cosas:

"Refiriéndonos a que nuestra finca Higüerito según Uds. no consta nada más que de 99.45 hemos de echar abajo tal dicho, el que conceptuamos fuera de toda veracidad, pues solamente sus condueños que lo somos los abajo firmados, sabemos que según nuestro plano hecho recientemente, Higüerito se compone de 117 cuerdas después de deducir las que eran de Bonocio, y de cuyas 117 cuerdas, hay en explotación 112, lo que podemos hacer constar si Uds. desean lo hagamos.  En cuanto a que son Uds. los que mejor están pagando los arrendamientos, les diremos que esas son sus creencias, pero para demostrarles lo contrario, tomaremos a los Sres. Fantauzzi, quienes están pagando a Don José A. Díaz a razón de $30.00 la cuerda," etc.

La carta está suscrita por Sucs. de M. Díaz Fonseca, L. F. Díaz Llenza (apoderado general).

Con la precedente prueba la evidencia directa y circunstancial fué tan robusta que el peso de la prueba pasó del apelado al apelante.  Su alegación principal fué que en todas las ocasiones él hablaba de la participación materna perteneciente a Bonocio que había sido cedida anteriormente a Balseiro & Giorgetti.  Como hemos indicado, sin embargo, la carta estaba firmada "Sucs. de M. Díaz Fonseca" que era el nombre del padre del apelante y no de su madre.  Dentro de una familia y dada la intimidad que existe entre hermanos como aparece del caso casi se presumiría que la venta

de una parte integrante de una finca en la cual todos estaban .interesados se divulgaría entre los mismos.

El apelante a la vez fué testigo del apelado. Al preguntársele por qué no compareció Bonocio en la escritura de poder a favor de Rafael dijo que no sabía y que algunos de sus otros hermanos no comparecieron. La prueba, como hemos visto, tiende a establecer que todos excepto Bonocio comparecieron. Asimismo al ser preguntado acerca de una carta escrita a él por Balseiro & Giorgetti, dijo que no recordaba de tal carta pero su abogado hizo que explicara que dicha carta estaba en poder del abogado.

Vemos que el apelante puede ser absolutamente veras, pero hubo tal conflicto en la prueba directa y circunstancial, que no podemos modificar la conclusión de la corte inferior. Esa corte, por supuesto, tenía derecho a no dar crédito al apelante como testigo.

Sostuvo también el apelante que se cometió error al declararse con lugar una excepción previa a la demanda, pero estuvo conforme en que renunció a tal error al radicar su demanda enmendada. Debe confirmarse la sentencia apelada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados del Toro, Aldrey y Hutchison.